IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RONALD L. GRUENFELDER,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | CV 13–162–M–DWM-JCL<br><br>FINDINGS & RECOMMENDATION |

Plaintiff Ronald Gruenfelder brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-433. Gruenfelder protectively filed his application in November 2007, alleging disability since January 1, 1998, due to degenerative disc disease and nerve damage in his right leg. (Tr. 223, 250). Gruenfelder's application was denied initially and on reconsideration, and he

requested a hearing which took place on September 14, 2009. (Tr. 163-66; 107-38). Gruenfelder was not represented by an attorney at that hearing. After the ALJ issued a decision denying Gruenfelder's application, the Appeals Council granted Gruenfelder's request for review and remanded the case for further proceedings and a new decision. (Tr. 144-53; 159-60).

Gruenfelder appeared with counsel at the hearing on remand, and on June 26, 2012, the ALJ issued a second decision, once again finding that Gruenfelder was not disabled within the meaning of the Act at any time on or before the expiration of his insured status on December 31, 2002. (Tr. 15-37; 38-106). The Appeals Council denied Gruenfelder's subsequent request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. (Tr. 5-10). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Gruenfelder was 38 years old at the time of his alleged onset date, and 52 years old at the time of the ALJ's decision.

I. **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

The ALJ found at step one that Gruenfelder met the insured status requirements of the Act through December 31, 2002, and had not engaged in substantial gainful activity since his January 1, 1998, alleged onset date. (Tr. 19). At step two, the ALJ found that on or before December 31, 2002, Gruenfelder had the following severe impairments: degenerative disc disease with a history of a herniated disc at L5-S1, status post hemilaminotomy and discectomy on November 5, 1992, with chronic low back pain and right S1 radiculopathy. (Tr. 19). The ALJ concluded at step three that Gruenfelder did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (Tr. 21). The ALJ also found that while Gruenfelder's "medically determinable back impairment could have reasonably been expected to cause his alleged symptoms on or before December 31, 2002," his "statements concerning the intensity, persistence, and limiting effects of his pain and other symptoms on or before December 31, 2002," were not entirely credible. (Tr. 24). The ALJ found that Gruenfelder was capable of a full range of light work and there were jobs in significant numbers in the national economy that he could have performed, including work as a parking lot attendant, bench assembler, addressing clerk, and food and beverage order clerk. (Tr. 31-32).

## A. Medical Opinions

Gruenfelder argues the ALJ erred by not giving more weight to the opinion of treating physicians Dr. Kendrick Blais and Dr. Harvey Swanson.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion in turn "carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2).

The Commissioner may disregard a treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."

*Magallanes*, 881 F.2d at 751. Similar standards apply to the ALJ's evaluation of an examining physician's opinion. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

    1.    <u>Dr. Kendrick Blais</u>

Gruenfelder has a history of chronic low back pain, and had a lumbar laminectomy in 1992. When diagnostic imaging in 1994 showed ongoing disc degeneration, he sought treatment from Dr. Michael James at the Veterans Administration ("VA"). (Tr. 526-33, 575, 614). Gruenfelder had a somewhat limited low back range of motion and low back pain with straight leg raising, but strength and sensation in his lower extremities were otherwise intact and Gruenfelder did not report "any significant pain as a limiting factor." (Tr. 614). The only medical records between 1995 and 2000 are two x-ray reports showing mild degenerative disk disease and minor degenerative changes. (Tr. 527, 590).

In March 2000, more than two years after his alleged onset date, Gruenfelder sought treatment from Dr. Kendrick Blais for low back pain. (Tr. 425). Gruenfelder saw Dr. Blais or his physician assistant ten times between March 2000 and May 2002. (Tr. 416-25, 569). Dr. Blais last saw Gruenfelder on May 28, 2002. (Tr. 569). Approximately ten years later, on May 8, 2012, Dr. Blais completed a questionnaire provided by Gruenfelder's counsel on which he

indicated that Gruenfelder's back impairment met the criteria for presumptive disability under Listing 1.04A for disorders of the spine. (Tr. 569-71). On a line asking for explanatory narrative, Dr. Blais wrote that "Gruenfelder exhibited a waxing and waning course. Slight to moderate activity readily caused major flares." (Tr. 571).

The ALJ considered Dr. Blais's opinion but declined to give it "any significant weight" because it was not consistent with his treatment notes. (Tr. 29). When Gruenfelder first saw Dr. Blais in March 2000, he reported "chronic low back pain, generally controlled [with] occasional use [of] Fioricet." (Tr. 425). Gruenfelder also indicated he was unemployed and disabled, and advised Dr. Blais that he "doesn't intend to seek work or vocational rehab." (Tr. 425). Dr. Blais nonetheless "suggested that [Gruenfelder] try voc rehab as [he] seems very able to participate in office level work at least." (Tr. 425).

Gruenfelder returned to Dr. Blais in May 2000, at which time he appeared in no acute distress and had slight limitations in his range of motion. (Tr. 424). Dr. Blais refilled Gruenfelder's Fioricet, provided him with a 30-day trial of Vioxx samples, and encouraged him to continue walking every day. (Tr. 424). When Gruenfelder next saw Dr. Blais in August 2000, he was in no acute distress and again had only slight limitations in his range of motion. (Tr. 422). Gruenfelder

followed up with Dr. Blais again in December 2000 and indicated that he still considered himself fully disabled. (Tr. 421). Dr. Blais again identified only minor limitations and wrote that Gruenfelder's "apparent clinical presentation is not consistent with his stated complete disability." (Tr. 421).

Gruenfelder returned to Dr. Blais's clinic for prescription refills twice in 2001 – once in May and once in October. (Tr. 418-20). Gruenfelder stated during his May appointment that he had not exercised or stretched in three months, and was advised to begin doing so. (Tr. 420). At his October appointment, he was once again instructed to stretch and exercise, but stated that he "is retired and doesn't do that stuff." (Tr. 419).

Gruenfelder saw Dr. Blais three more times in 2002. (Tr. 416-17). In March 2002, Gruenfelder reported flares of back pain "if he is cutting or loading firewood," and complained of a recent acute exacerbation which had diminished back to baseline. (Tr. 416). Dr. Blais's findings were largely unremarkable, and he once again refilled Gruenfelder's Fioricet prescription. (Tr. 416). In April, Gruenfelder reported another acute exacerbation of back pain after doing "a little more lifting than usual" and Dr. Blais prescribed Vicodin and diazepam. (Tr. 417). Gruenfelder saw Dr. Blais for the last time in May 2002. (Tr. 416). Dr. Blais noted that Gruenfelder's "recent acute exacerbation of back pain ha[d]

diminished back to baseline," and observed that Gruenfelder moved "from a seated to a standing position without difficulty" and performed flexion, extension, and side bending with minimal limitation. (Tr. 416)

Dr. Blais's treatment notes consistently reflect that Gruenfelder had only mild limitations and back pain that was well controlled on medication, with the exception of sporadic flare ups due to heavy activity. The ALJ discussed Dr. Blais's records in his decision, and found with ample support that they were "not consistent with the significant functional limitations he" identified "10 years later." (Tr. 29). This was a sufficiently clear and convincing reason, supported by substantial evidence, for rejecting Dr. Blais's opinion as set forth on the May 8, 2012, questionnaire.

    2.    <u>Dr. Harvey Swanson</u>

There is no evidence that Gruenfelder sought any medical care between the time he last saw Dr. Blais in May 2002, and when he first established care with Dr. Harvey Swanson some four and a half years later in June 2007. (Tr. 441-42). At his initial appointment with Dr. Swanson, Gruenfelder reported low back pain and no new problems. (Tr. 441-42). Dr. Swanson prescribed Lortab and flexeril. (Tr. 442). Gruenfelder saw Dr. Swanson three more times – August 2007, February

2008, and August 2008. (Tr. 439, 456-57). At each visit, Gruenfelder reported that his pain was the same and Dr. Swanson refilled prescriptions.

On August 28, 2009, Dr. Swanson completed a medical source statement form, on which he identified limitations inconsistent with the ability to perform a full range of light work. (Tr. 464). As did Dr. Blais, in May 2012 Dr. Swanson completed a questionnaire provided by Gruenfelder's counsel on which he indicated that Gruenfelder's back impairment met the criteria for presumptive disability under Listing 1.04A for disorders of the spine. (Tr. 565-67).

The ALJ considered Dr. Swanson's August 2009 and May 2012 opinions, but gave them little weight in large part because he had not even begun treating Gruenfelder until June 2007 – nearly four and a half years after Gruenfelder's insured status had expired. (Tr. 29). The ALJ also pointed out that Dr. Swanson's opinions were not consistent with his treatment notes, which were not indicative of any significant functional limitations. (29, 439, 456-57). These were sufficiently clear and convincing reasons for rejecting Dr. Swanson's opinions.

### C. Credibility

Gruenfelder argues the ALJ did not provide sufficiently clear and convincing reasons for discrediting his testimony. If the ALJ finds "the claimant

has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). Gruenfelder met his initial burden because he provided evidence that he has underlying impairments that could reasonably be expected to produce some degree of pain, and the ALJ did not find that he was malingering. As set forth below, however, the ALJ then provided clear and convincing reasons for finding Gruenfelder's subjective testimony only partially believable.

Gruenfelder testified that he experienced severe, debilitating back pain during the relevant time period. (Tr. 51-82). He has described the pain as "sharp, severe, steady, long term pain" and said he experiences severe pain whenever he moves. (Tr. 294). Gruenfelder described being unable to sit or stand up straight, not being able to sit for more than for five to ten minutes without his back hurting, and not being able to bend over. (Tr. 53, 251). Gruenfelder indicated he was in constant pain, and said that on a good day he would lie down twice a day for

between 20 minutes and two hours at a time. (Tr. 57-58). He testified that standing or walking too far caused his leg and hip to go numb and his back pain to flare up. (Tr. 53, 251).

The ALJ discounted Gruenfelder's testimony as to the debilitating extent of his back pain in large because it was "inconsistent with his limited medical treatment." (Tr. 26). As noted above, there is no evidence that Gruenfelder sought or received any medical treatment for his allegedly disabling impairments for more than a year after his alleged onset date. And even after Gruenfelder began seeing Dr. Blais March 2000, he followed a conservative course of treatment consisting of prescription pain medication. The ALJ permissibly questioned Gruenfelder's credibility based on his limited medical treatment. *See Burch v Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination."); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment").

The ALJ also discounted Gruenfelder's testimony as to the disabling severity of his pain in part because he refused exercise, stretch, or participate in

physical therapy as recommended by Dr. Blais and physician assistant Libby Silberling. (Tr. 26, 30). When Gruenfelder visited Dr. Blais's clinic in May 2001, for example, he indicated that he had not exercised or stretched in three months and was advised to being doing so. (Tr. 26, 420). And at an October 2001 appointment, Gruenfelder was once again instructed to stretch and exercise, but stated that he "is retired and doesn't do that stuff." (Tr. 419). The ALJ reasonably found the fact that Gruenfelder refused to follow his health care providers' treatment recommendations undermined his credibility as to the extent of his pain. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (the ALJ may consider unexplained or inadequately explained failure to follow a prescribed course of treatment).

The ALJ also found Gruenfelder less than entirely credible based on evidence that he engaged in activities that were not consistent with his testimony. There was evidence that Gruenfelder sometimes went "out into the woods" to cut and load firewood, although he could anticipate that doing so would cause his pain to flare (Tr. 418). As the ALJ also noted, Gruenfelder reported in October 2001 that his back pain was "aggravated by riding in truck over bumpy roads, lifting wood, [and] hauling water." (Tr. 29, 419). The ALJ reasonably found the fact

that Gruenfelder engaged in those activities, albeit with discomfort, undermined his testimony that he was so incapacitated by severe pain that he could not even sit or stand upright, and was unable to lean over the sink for more than a few minutes to wash his dishes. (Tr. 66).

Finally, the ALJ cited the lack of objective medical evidence during the relevant period as a basis for his adverse credibility determination. As discussed above, what few medical records there are from the period between Gruenfelder's alleged onset date in January 1998 and the expiration of his insured status in December 2002 contain little in the way of objective findings. X-ray reports from September 1997 and October 1999 showed mild degenerative disk disease and minor degenerative changes. (Tr. 527, 590). And Dr. Blais consistently identified only slight limitations in Gruenfelder's range of movement. The ALJ reasonably found that Gruenfelder's subjective complaints were not supported by the objective medical evidence as a whole. While it would have been error for the ALJ to discount Gruenfelder's testimony based solely on the lack of objective medical evidence, it was one appropriate factor for him to consider. *See, e.g, Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007).

The Court thus finds the ALJ provided sufficiently clear and convincing

reasons for finding Gruenfelder's subjective testimony as to the extent of his pain and limitations not entirely credible.

### D. Vocational Expert

Finally, Gruenfelder argues the ALJ's hypothetical to the vocational expert was flawed because it did not incorporate the limitations to which he testified, or the limitations identified by Dr. Blais and Dr. Swanson. But because the ALJ properly discredited Gruenfelder's testimony and rejected Dr. Blais's and Dr. Swanson's opinions, he was not required to include those limitations. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence).

To the extent Gruenfelder argues the ALJ erred by finding that he suffered from severe impairments at step two, but then finding him capable of a full range of light work, he is mistaken. The ALJ accounted for Gruenfelder's severe impairments by limiting him to light work, rather than medium or heavy work. Substantial evidence of record supports the ALJ's assessment of Gruenfelder's residual functional capacity, which was in turn reflected in the hypothetical question he posed to the vocational expert.

## IV. <u>Conclusion</u>

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error. Accordingly,

IT IS RECOMMENDED that Gruenfelder's motion for summary judgment be DENIED and the Commissioner's decision be affirmed.

DATED this 4th day of September, 2014

Jeremiah C. Lynch
United States Magistrate Judge